ABSALON BELLEFLEUR *vs.* THE UNITED STATES FINISHING COMPANY.

Second Judicial District, Norwich, April Term, 1930.
WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued April 29th—decided June 2d, 1930.

*Henry L. McGuire* and *Clayton B. Smith,* for the appellant (plaintiff).

*Edward F. Fletcher* of Rhode Island, with whom was *J. P. Huntington,* and, on the brief, *George Paul Slade,* for the appellee (defendant).

HAINES, J. The question at issue involves the rights of the parties under a contract. The finding, which is not contested, discloses that this contract was in the

form of a written order, executed by the defendant and duly accepted by the plaintiff, and was in form as follows:

"The United States Finishing Company

Engineering Department
Providence, R. I.
Date Dec. 21, 1927.

A. C. Bellefleur & Son Co.
♯ 136 Garfield Ave.,
New London, Conn.

Please send us:

1—36″ Bullard Vertical Boring Mill.

This machine to be taken for a 30 day trial. Can be returned if not satisfactory. All as per their Mr. Bellefleur's letter.

Price to be $2,400.

THE UNITED STATES FINISHING COMPANY,
Per J. W. McKinley."

At the time this order was given the mill was in the hands of the Simmons Machine Tool Corporation at Albany, New York, and was purchased by the plaintiff from that corporation for the purpose of resale to the defendant. By arrangement between the plaintiff and the Simmons Corporation, the latter caused the mill to be shipped to the order of the "Simmons Machine Tool Corporation, Providence, R. I. Notify A. C. Bellefleur and Son Company at Providence, R. I." with draft attached to the bill of lading. These papers were received by the plaintiff at New London, and on January 3d, 1928, the plaintiff paid the draft at its bank in New London and secured the bill of lading. The next day, January 4th, Bellefleur went to Providence, and about eleven o'clock delivered the bill of lading to the cashier of the railroad company, and about noon, went to the place of business of the de-

fendant and informed its superintendent, McKinley, that the mill was in Providence, and left an order on the railroad company to deliver the mill to the defendant. The order read as follows:

"N.Y.N.H. & H.R.R.

Attention of Cashier.

Dear Sir: Please deliver machine (Boring Mill) which arrived yesterday from Albany, N. Y. billed to notify A. E. Bellefleur & Son Co., to the U. S. Finishing Co. on demand, bill of lading left with you today.

A. C. BELLEFLEUR & SON CO.

per A. C. Bellefleur."

The mill was on a separate freight car, the exact location of which on January 4th does not appear, but it was placed on the defendant's siding by the railroad company about six o'clock in the evening of Friday, January 6th, 1928. The defendant began unloading the mill at seven o'clock the following morning, and completed the unloading about eleven-thirty that morning, the work being done as expeditiously as possible. In order to operate the mill, it was necessary to set it in concrete and connect it with the driving shaft in the shop, and this was known to the plaintiff. The following Monday morning, January 9th, the defendant set up the mill in its shop for trial. It was found necessary to replace a counter plate cable which was found to be broken, and this, with the hardening of the cement, required the entire day. The trial of the mill was begun the following morning, January 10th, and was continued with every effort to use the mill, until January 24th, but the defendant was unable to make it turn out proper work owing to its defective condition. Upon request made by the defendant to the makers of the mill, the latter sent a representative to inspect it and see if it could be made to work prop-

erly, but though the representative called at the defendant's place two or three times, he could not inspect the machine until February 7th, owing to the absence of the defendant's superintendent, McKinley. Upon his inspection that day, the maker's representative pronounced the mill incapable of performing work without repairs costing $1800 to $2000. On the same day, the defendant notified the plaintiff by letter that the mill was unsatisfactory and that it was ready to be shipped, and requested shipping instructions by return mail. This letter was received by the plaintiff the following day, February 8th, but shipping instructions were, and ever since have been refused, and the plaintiff demanded payment for the mill from the defendant, and later brought this action to recover the price named in the contract.

A vital question presented by the appeal is involved in the interpretation of the contract between the parties. The trial court held that the terms of that contract gave the defendant full thirty days within which to make trial of the mill, and if the mill was not satisfactory, that the defendant had a reasonable time thereafter in which to notify the plaintiff of its desire to return it, and that the thirty days' trial should be held to have begun from the time the mill could be expeditiously unloaded and set up for trial after the car had been set on the defendant's siding by the railroad company, and that the notice that the mill was not satisfactory, was given to the plaintiff by the defendant "within a reasonable time after the expiration of the thirty days' trial period, if not before." The plaintiff's position upon this appeal is stated in its brief to be that under the contract the defendant had exactly thirty days in which to reject the machine. Failure on their part to notify the plaintiff of the rejection of the machine within thirty days constituted

as a matter of law, acceptance of the machine. On the other hand, the defendant claims that, under the contract, the "purchaser has thirty full days for trial and a reasonable time thereafter within which to notify the vendor of the acceptance or rejection of the boring mill." The contract provides, "This machine to be taken for a thirty day trial." We are unable to see any serious difficulty in determining the meaning of this phrase. It cannot fairly be construed to mean that the machine was to be taken for thirty days only, for a trial. On the contrary, it is explicitly stated that it is to be taken for a thirty days' trial, and there is nothing in the contract as to the time which the defendant is to have to notify the plaintiff of its refusal to accept the machine. Under these circumstances, the title to the machine cannot be said to have passed to the defendant at the end of the thirty-day period from the delivery of the mill into the possession of the defendant as the plaintiff claims.

"When goods are delivered to the buyer on approval, or on trial, or on satisfaction, or other similar terms, the property therein passes to the buyer: (a) When he signifies his approval or acceptance to the seller or does any other act adopting the transaction, (b) if he does not signify his approval or acceptance to the seller, but retains the goods without giving notice of rejection, then, if a time has been fixed for the return of the goods, on the expiration of such time, and, if no time has been fixed, on the expiration of a reasonable time." General Statutes, § 4685. Rules for ascertaining intention.

"Frequently in bargains of this sort, the contract does not fix a time for approval to be signified but states only the period of trial to be allowed. According to the better view this cannot be construed as requiring the buyer to signify his approval or acceptance

within the time allowed him for trial. He may use the full period of trial (though he need not do so), and exercise his option of giving notice by doing so with reasonable promptitude thereafter." Williston on Sales (2d Ed.) Vol. 1, § 272.

The contract, as we interpret it, places the parties in a position similar to that in a Massachusetts case: The defendant had placed one of the plaintiff's engine stops on its engine in competition with another make of stop, under a contract by which the defendant had the privilege of a thirty-day trial of the stop before deciding as to its purchase. Nothing was said in the contract as to what should be done at the end of the thirty days if the defendant decided not to take the stop. The court stated the rule to be that "the party to the contract who is to make the trial has the full period agreed upon for the trial, and in the absence of any stipulation on the point he has a reasonable time after the expiration of it to signify his election." *Springfield Engine Stop Co.* v. *Sharp*, 184 Mass. 266, 268, 68 N. E. 224.

Under a very similar contract wherein the defendant had the privilege of a thirty-day trial of a machine, the court held that it was the duty of the defendant to set up and start the machine within a reasonable time after it was received, and that the thirty days allowed for trial would begin to run as soon as that reasonable time had expired. *Isaacs* v. *Macdonald*, 214 Mass. 487, 491, 102 N. E. 81.

The facts of the case at bar bring it within the rulings in both these cases, and we are in full accord with the conclusions reached therein. They appear to have had full acceptance in most of those jurisdictions where the question has been presented.

The finding makes it clear that the mill was set up and the trial begun without unreasonable delay, on

January 10th. The trial period of thirty days must be held to have begun on that date and to have ended at the close of February 9th. The trial had been completed before the latter date, and the plaintiff received notice of the rejection February 8th. The defendant's course therefore was fully within the terms of his privilege under the contract.

There is no error.

In this opinion the other judges concurred.